UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GEHART,

          Plaintiff,

v.

VISALUS, INC., a corporation, et al.,

          Defendants.

Case No. 4:17-CV-12132-MFL-DRG

Hon. Matthew F. Leitman

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants ViSalus, Inc., Nick Sarnicola, and Blake Mallen (collectively, "Defendants") hereby move to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for the reasons set forth in the attached Memorandum of Points and Authorities.

Pursuant to Local Rule 7.1 and the Court's order from the status conference held on March 1, 2018, undersigned counsel received and reviewed a copy of Plaintiff's proposed FAC prior to its filing. Counsel notified Plaintiff's counsel of the anticipated grounds for moving to dismiss the claims in the FAC via letter dated April 10, 2018. Plaintiff did not concur and filed a revised version of the FAC.

WHEREFORE, Defendants respectfully move the Court to dismiss the FAC, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 31, 2018

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

/s/Nicholas B. Gorga
Nicholas B. Gorga (P72297)
Andrew W. Clark (P79165)
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506
Telephone Number: (313) 465-7640
Fax Number: (313) 465-7641
ngorga@honigman.com
aclark@honigman.com

and

QUARLES & BRADY LLP

Kevin D. Quigley (AZ Bar #015972)
Edward A. Salanga (AZ Bar #020654)
Brian A. Howie (AZ Bar #026021)
Michael S. Catlett (AZ Bar #025238)
*All Admitted to Practice in ED MI*
2 North Central Avenue
Renaissance One
Phoenix, AZ 85004
Telephone Number: (602) 229.5200
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com
michael.catlett@quarles.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GEHART,

      Plaintiff,

v.

VISALUS, INC., a corporation, et al.,

      Defendants.

Case No. 4:17-CV-12132-MFL-DRG

Hon. Matthew F. Leitman

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants submit this brief in support of their Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.........................................................................................iv

TABLE OF AUTHORITIES ...................................................................................v

STATEMENT OF ISSUES PRESENTED............................................................ viii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES............................ix

INTRODUCTION ..................................................................................................1

LEGAL STANDARD.............................................................................................3

ARGUMENT ..........................................................................................................4

I.      The *In Pari Delicto* Doctrine Bars Plaintiff's Action In Its
        Entirety. .................................................................................................4

II.     Plaintiff Fails To State A Claim For Promissory Estoppel
        (Count I). .............................................................................................10

III.    Plaintiff's Tortious Interference Claim Fails (Count II).....................13

IV.     Plaintiff Does Not State A Claim For Unjust Enrichment
        (Count III)............................................................................................15

V.      Plaintiff's Shareholder Oppression Claim Fails (Count V)................16

VI.     The Breach of Fiduciary Duty Claim Fails (Count VI) .....................18

VII.    Plaintiff's Conversion Claim Fails (Count VII) .................................19

VII.    Plaintiff's FEIP Promissory Estoppel Claim Fails (Count IX)...........20

CONCLUSION .....................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*,
  432 F. Supp. 2d 1319 (S.D. Fla. 2006) ................................................................ 14

*Byrd v. ViSalus, Inc.*,
  2018 WL 1637948 (E.D. Mich. Apr. 5, 2018) ........................................ x, 19, 20

*Caldwell v. PNC Fin. Servs. Grp., Inc.*,
  835 F. Supp. 2d 510 (S.D. Ohio 2011) .................................................................. 5

*Carruthers v. Flaum*,
  365 F. Supp. 2d 448 (S.D.N.Y. 2005) ........................................................... ix, 14

*Etts v. Deutsche Bank Nat'l Tr. Co.*,
  126 F. Supp. 3d 889 (E.D. Mich. 2015) .............................................................. 12

*First Sec. Savs. Bank v. Aitken*,
  573 N.W.2d 307 (Mich. Ct. App. 1997) .............................................................. 11

*In re Bernard L. Madoff Inv. Sec. LLC.*,
  721 F.3d 54 (2d Cir. 2013) .................................................................................... 5

*In re ClassicStar Mare Lease Litig.*,
  823 F. Supp. 2d 599 (E.D. Ky. 2011) .................................................................... 9

*Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*,
  525 F. Supp. 2d 911 (E.D. Mich. 2007) .......................................................... ix, 15

*Kamalnath v. Mercy Mem'l Hosp. Corp.*,
  487 N.W.2d 499 (Mich. Ct. App. 1992) .......................................................... ix, 13

*Kerrigan v. ViSalus*,
  112 F. Supp. 3d 580 (E.D. Mich. 2015) .............................................................. 13

*Kerrigan v. ViSalus, Inc.*,
  2018 WL 534485 (E.D. Mich. Jan. 24, 2018) ..................................................... 13

*Latham v. Matthews*,
  662 F. Supp. 2d 441 (D.S.C. 2009) ....................................................................... 5

*Marrero v. McDonnell Douglas Cap. Corp.*,
  505 N.W.2d 275 (Mich. Ct. App. 1993)............................................................. 11, 12

*Maxwell v. Bay City Bridge Co.*,
  2 N.W. 639 (Mich. 1879).................................................................................... 21

*McCann v. U.S. Bank, N.A.*,
  873 F. Supp. 2d 823 (E.D. Mich. 2012) ............................................................. 21

*Meathe v. Ret*,
  903 F. Supp. 2d 507 (E.D. Mich. 2012) ........................................................ ix, 16

*Meathe v. Ret*,
  547 F. App'x 683 (6th Cir. 2013) ....................................................................... 17

*Natoma Grp., L.L.C. v. Dermal Def., Inc.*,
  2006 WL 8431878 (E.D. Mich. Mar. 27, 2006).................................................. 10

*NCH Corp. v. Share Corp.*,
  757 F.2d 1540 (5th Cir. 1985) ...................................................................... 13, 14

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
  336 F.3d 495 (6th Cir. 2003) ............................................................................... 8

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*,
  437 F.3d 1145 (11th Cir. 2006) ...................................................................... ix, 5

*Orzel by Orzel v. Scott Drug Co.*,
  537 N.W.2d 208 (Mich. 1995) .................................................................... ix, 4, 9

*Productivity Techs. Corp. v. Levine*,
  268 F. Supp. 3d 940 (E.D. Mich. 2017) ............................................................. 18

*Reilly v. Vadlamudi*,
  680 F.3d 617 (6th Cir. 2012) ............................................................................... 3

*Shell v. Parrish*,
  448 F.2d 528 (6th Cir. 1971) ............................................................................... 5

*Simon v. Mann*,
  373 F. Supp. 2d 1196 (D. Nev. 2005) ............................................................ x, 18

*State Bank of Standish v. Curry*,
  500 N.W.2d 104 (Mich. 1993) .................................................................... ix, 12

*Sutter v. Ocwen Loan Servicing, LLC*,
2016 WL 3003346 (Mich. App. May 24, 2016)................................................... 20

*Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*,
96 F.3d 174 (6th Cir. 1996) .......................................................... ix, 11

*Timko's Estate v. Oral Roberts Evangelistic Ass'n*,
215 N.W.2d 750 (Mich. 1974)................................................ ix, 10, 21

**Statutes**

M.C.L. § 450.1109(2) ............................................................ 17

M.C.L. § 450.1489 ................................................................. 16

M.C.L. § 600.2919a(1)(a) ...................................................... 19

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................ i, iii

**Other Authorities**

97 Am. Jur. Trials 107 ....................................................... ix, 13

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Are all claims in the FAC barred under the *in pari delicto* doctrine?

    **Defendants' Answer:  Yes.**

2.  Does the Complaint state a promissory estoppel claim in counts one and nine?

    **Defendants' Answer:  No.**

3.  Does the Complaint state a viable tortious interference claim in count two?

    **Defendants' Answer:  No.**

4.  Does the Complaint state a viable unjust enrichment claim in count three?

    **Defendants' Answer:  No.**

5.  Does the Complaint state a viable claim for declaratory relief in count four?

    **Defendants' Answer:  No.**

6.  Does the Complaint state a viable shareholder oppression claim in count five?

    **Defendants' Answer:  No.**

7.  Does the Complaint state a viable breach of fiduciary duty claim in count six?

    **Defendants' Answer:  No.**

8.  Does the Complaint state a viable conversion claim in count seven?

    **Defendants' Answer:  No.**

9.  Does the Complaint state a misrepresentation claim in count eight?

    **Defendants' Answer:  No.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Regarding the *in pari delicto* doctrine (all claims)**

> *Orzel by Orzel v. Scott Drug Co.*,
>> 537 N.W.2d 208 (Mich. 1995)

> *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*,
>> 437 F.3d 1145 (11th Cir. 2006)

**Regarding promissory estoppel**

> *Kamalnath v. Mercy Mem'l Hosp. Corp.*,
>> 487 N.W.2d 499 (Mich. Ct. App. 1992)

> *State Bank of Standish v. Curry*,
>> 500 N.W.2d 104 (Mich. 1993)

> *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*,
>> 96 F.3d 174 (6th Cir. 1996)

> *Timko's Estate v. Oral Roberts Evangelistic Ass'n*,
>> 215 N.W.2d 750 (Mich. 1974)

**Regarding failure of tortious interference claims based on the completion of illegal conduct**

> 97 Am. Jur. Trials 107

> *Carruthers v. Flaum*,
>> 365 F. Supp. 2d 448 (S.D.N.Y. 2005)

**Regarding unjust enrichment**

> *Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*,
>> 525 F. Supp. 2d 911 (E.D. Mich. 2007)

**Regarding standing to assert shareholder oppression claim**

> *Meathe v. Ret*,
>> 903 F. Supp. 2d 507 (E.D. Mich. 2012)

**Regarding fiduciary duties owed by shareholders in a Nevada corporation**

*Simon v. Mann*,
      373 F. Supp. 2d 1196 (D. Nev. 2005)

**Regarding the pleading requirements for conversion and statutory conversion**

*Byrd v. ViSalus, Inc.*,
      2018 WL 1637948 (E.D. Mich. Apr. 5, 2018)

# INTRODUCTION

In 2010, Plaintiff Michael Gehart became an independent promotor for ViSalus.  He claims that, after joining, he "soon discovered" that ViSalus' "real 'business opportunity' and earning potential [were] centered on recruiting distributors and having them purchase distributorship packages" and automatic monthly shipments of products, as well as monthly internet subscriptions, rather than on making retail sales to customers.  (Dkt. 33 ¶ 5.)  In other words, Plaintiff "soon discovered" that ViSalus operated a pyramid scheme.[1]  Despite that discovery, he promoted the company for seven years, made almost $2 million, became a top promoter, and convinced over 6,000 other people to join.  (*Id.* ¶¶ 101, 144.)

Plaintiff claims that he received special treatment from ViSalus that allowed him to make significant (and atypical) sums of money.  Among other perks, Plaintiff received large discounts on products and was allowed to sell them online at below retail price.  (*E.g.*, *id.* ¶¶ 11–12, 74, 86–88.)  Of course, this activity was done "under the radar."  (Dkt. 1 ¶¶ 38, 58.)  Meanwhile, it was "clear" to Plaintiff

---

[1] Defendants deny Plaintiff's allegation that ViSalus operates an illegal pyramid scheme.  Defendants also dispute Plaintiff's simplistic conclusions about what makes a direct sales company an illegal pyramid scheme.  That question involves much more than whether promoters make money by selling products to retail customers.  However, for purposes of this Motion, Defendants (and the Court) must take as true Plaintiff's allegation that ViSalus operates a pyramid scheme.

that the people he continued to recruit into ViSalus would struggle to make money selling product by the rules.  (*E.g.*, Dkt. 33 ¶ 10.)

At some point, Defendants allegedly decided to end the secret arrangement with Plaintiff.  Claiming that Defendants promised never to do that very thing, Plaintiff asserts a claim for promissory estoppel and seeks to recover profits he would have made had he continued buying ViSalus products in large volumes at a discount, earning commissions and bonuses on those purchases under ViSalus' Compensation Plan, and re-selling ViSalus products to consumers.  (*E.g.*, *id.* ¶ 158.)  Plaintiff also contends that Defendants were unjustly enriched by benefits Plaintiff provided them and that they tortiously interfered with his relationship with the online sales website Amazon.

Broadening the scope of this litigation, the FAC also contains brand new claims for damages based on an incentive program that ViSalus began offering in 2015—the Founders Equity Incentive Plan ("Plan").  The Plan is a phantom equity program whereunder ViSalus independent promoters qualified for "shares" by achieving certain metrics in ViSalus' Compensation Plan.  The "shares" were to be converted into units in the Plan, with payouts to be made at a later time based on ViSalus' overall performance.  To earn units in the Plan, Plaintiff "order[ed] more products from Defendants" (which he in turn sold on Amazon for a profit), "recruit[ed] new distributors" (despite believing that they would lose their money), and "increase[d] sales in his downline" (which earned him bonuses and

commissions through the Compensation Plan). (*Id.* ¶ 218.) Although Plaintiff *made* money by doing these things, he seeks damages on grounds that Defendants misrepresented the nature and value of units in the Plan, wrongfully terminated his participation, and never issued the payments or stock shares to which he was allegedly entitled.

Plaintiff's factual and legal positions do not state a claim for relief under any of the nine claims set out in the FAC. The allegations, when taken as true, would require the Court to enforce agreements and otherwise sanction behavior that Plaintiff asserts was in furtherance of the pyramid scheme alleged in *Kerrigan v. ViSalus*, No. 2:14-cv-12693 and pending in this Court ("*Kerrigan*"). (Again, ViSalus denies ever operating a pyramid scheme.) The claims suffer from additional faults, as fully set forth below.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must have "facial plausibility"—*i.e.*, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012). The Court must "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Id.* at 622. A complaint, however, must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*

## ARGUMENT

Plaintiff asserts a variety of claims against Defendants, each of which fails as a matter of law.

## I.     The *In Pari Delicto* Doctrine Bars Plaintiff's Action In Its Entirety.

Under the doctrine of *in pari delicto*—also known as the "wrongful conduct rule"—a person "cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Orzel by Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 212 (Mich. 1995).[2]  In other words, "courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Id.* at 213.  Otherwise, "several unacceptable consequences would result."  First, "courts in effect would condone and encourage illegal conduct." *Id.*  Second, bad actors "would be able to receive a profit or compensation as a result of their illegal acts." *Id.*  Third, "the public would view the legal system as a mockery of justice." *Id.*

Courts do not require a showing of *knowledge* of illegal conduct before applying the wrongful conduct rule. *See id.* at 213–17.  The Court can, and should, apply the rule at the pleading stage when the outcome is plain on the face of the

---

[2] Plaintiff contends that his claims are governed by Michigan law. (*See* Dkt. 21 at 7 n.2.)  Without conceding that Michigan law applies to this case or waiving the right to argue later that the law of Arizona (or some other state) applies, Defendants argue under Michigan common law for purposes of this Motion (with the sole exception of Plaintiff's breach of fiduciary duty claim, which should be governed by Nevada law).

pleadings. *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 57, 65 (2d Cir. 2013); *see also Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152–56 (11th Cir. 2006).

Here, Plaintiff alleges that ViSalus "operated an illegal pyramid scheme masking it as a wholesale distribution business," and points to the allegations from *Kerrigan*.[3] (Dkt. 33 ¶ 22; *see also id.* ¶ 2 ("ViSalus' only real business was to conduct a massive recruiting scheme for promoters"); ¶ 25 (referring to "the ViSalus pyramid scheme").)[4] This Court knows the *Kerrigan* case quite well. The defendants in that case, which include the Defendants in this action, have strenuously and consistently denied that ViSalus has ever operated as an illegal

---

[3] The Court may take judicial notice of the pleadings in *Kerrigan* because it is a matter of public record and because Plaintiff relies on *Kerrigan* in the FAC. *Latham v. Matthews*, 662 F. Supp. 2d 441, 453 n.13 (D.S.C. 2009).

[4] After Defendants moved to dismiss the original complaint as barred by *in pari delicto* (Dkt. 20), Plaintiff now attempts to downplay his prior contention that ViSalus was a pyramid scheme. (*Compare* Dkt. 1 at 1 ("ViSalus operated an illegal pyramid scheme") *with* Dkt. 33 at 1 ("ViSalus . . . **may or may not be** an illegal pyramid scheme.") (emphasis added).) Plaintiff has also removed references to various "under-the-table payments for recruiting" that he allegedly received from Sarnicola. (*E.g.*, Dkt. 1 ¶ 18.) The motivation for Plaintiff's recent conversion is self-evident, but his effort to sidestep the wrongful conduct rule is unavailing. First, Plaintiff cannot "unring the bell" as to allegations in his original Complaint, which are properly treated here as admissions. *See Caldwell v. PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510, 516 n.1 (S.D. Ohio 2011) (citing *Shell v. Parrish*, 448 F.2d 528, 530 (6th Cir. 1971) (allegations in the plaintiff's original complaint, which had been superseded by an amended complaint, constituted admissions against him)). Second, notwithstanding the cosmetic changes designed to give Plaintiff flexibility on the pyramid scheme question, the FAC still establishes that Plaintiff's claims arise out of alleged illegal conduct that he admits to furthering.

pyramid scheme.  But at this stage, the Court is required to accept Plaintiff's factual allegations as true.  And taking them as true, Plaintiff is not entitled to recover damages related to his involvement with ViSalus because he knowingly participated in alleged illegal conduct.  Indeed, Plaintiff not only admits to the same conduct underlying the claims against several ViSalus promoters from the *Kerrigan* litigation, he also describes other ways that he allegedly helped ViSalus further the purported pyramid scheme.

First, Plaintiff induced thousands of people to join ViSalus, while allegedly believing that those recruits would lose money.  Plaintiff joined ViSalus in 2010 and allegedly "soon discovered" that the business opportunity "was centered on recruiting distributors" and that commissions were the "result of distributors' continued purchase of product for their own consumption."  (*Id.* ¶ 5.)  By 2011, Plaintiff supposedly observed that his "own down-line, which extended to many states, had difficulty selling product to more than one or two customers;" "found it difficult to recruit additional distributors;" and, to meet required quotas, ended up purchasing product for themselves at a loss.  (*Id.* ¶¶ 10, 53, 58.)  With that knowledge, Plaintiff proceeded to promote and sell ViSalus' products and business opportunity for the next six years—ultimately recruiting over 6,000 people.  (*Id.* ¶ 101.)  He "pushed" to increase his recruiting efforts even more in 2015 to earn the units in the Plan that forms the basis of Counts IV–IX.  (*Id.* ¶ 218, 209.)  Plaintiff even helped ViSalus grow internationally by traveling to Germany to

6

"assist[] Defendants in promoting the ViSalus expansion" and "set[] up the German business."[5]  (*Id.* ¶¶ 103, 156.)

Second, Plaintiff alleges he was an insider who received special treatment. Plaintiff unreservedly alleges that Defendants bent their own rules to accommodate his Amazon sales efforts, thereby allowing him to make money while (in his opinion) most others lost.  (*Id.* ¶ 86 (alleging Plaintiff had "approval to purchase bulk orders of product in excess of the $4,999.00 monthly 'limit'"); ¶ 88 (Plaintiff received "discounted pricing"); ¶¶ 90–91, 94 (Defendants "implement[ed] a work-around" to a policy change so that Plaintiff could continue to receive free product in connection with his large-volume orders); ¶ 93 (Plaintiff and ViSalus "regularly communicated by e-mail and telephone . . . to work around the ViSalus system notices flagging his account").)

Meanwhile, Plaintiff alleges that "ViSalus promoted [him] as one of its top earning distributors and one of its distributors with the most customers," while concealing the real reason he was so successful (his secret arrangements).  (*Id.* ¶ 83; Dkt. 1 ¶¶ 38, 60.)  In *Kerrigan*, the plaintiffs' claims against several defendants are based upon the exact same conduct.  *See Kerrigan*, Dkt. 196 at 148, 154

---

[5] The plaintiffs in *Kerrigan* assert that this same conduct constitutes civil racketeering.  *See Kerrigan*, No. 2:14-cv-12693, Dkt. 196 ¶ 264 (alleging that promoter defendants built large downlines of promoters who could not make money selling product); ¶ 298 (alleging that promoter defendants attempted "to perpetuate the scheme" in Germany).

(alleging that appearing in promotions as a successful promoter when, in reality, the success was "the result of hidden arrangements that would not be made available to persons who were being recruited" constituted an "overt act[] to achieve or further the unlawful objects and purposes of the pyramid scheme"). Plaintiff has placed himself in the same shoes as those defendants, who allegedly "understood that the terms of their distributor relationship with ViSalus was [sic] materially different than the people they were to recruit." (*Id.* ¶ 263; *id.* ¶ 264 (alleging that "each of these defendants and others made false statements intended to be disseminated to unsuspecting recruits purporting to be 'just like' the new recruit, all with the intent to lure people into the system that each defendant knew was highly unlikely to make any money").)

What is more, Plaintiff alleges that he "was among a group of approximately 20-30 top level promoters who were included in conversations from the top management . . . regarding various promotions, ideals, and plans for the company." (Sworn Declaration of Michael Gehart, *Byrd v. ViSalus, Inc.*, No. 4:17-cv-12626, Dkt. 22-7 ¶ 3, attached as Exhibit "A") ("Gehart Declaration").)[6] *Cf. Kerrigan*, Dkt. 131 ¶ 262 (alleging that top-level promoter defendants "participated in

---

[6] "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

numerous strategic sessions" and helped operate and manage the scheme).  Taking

Plaintiff's allegations as true, he was an "insider" who not only received special

treatment undisclosed to recruits but also helped concoct promotions, plans, and

strategy for the company.

Third, Plaintiff's Amazon sales arrangement allegedly helped ViSalus

operate an illegal scheme in several discrete ways:

- Plaintiff admits that he created thousands of fake customers when selling product on Amazon, thereby allegedly allowing ViSalus to misrepresent its sales figures to recruits.  (Dkt. 33 ¶¶ 14–15, 136; *see also id.* ¶ 69 ("ViSalus would facilitate these wholesale sales and credit itself with records of reams of fake customers."); ¶ 79 ("[I]t served [Defendants'] purpose to have this record of 'customers', and so they encouraged Plaintiff to continue and further to expand the business.").)

- Plaintiff claims that his bulk purchases helped ViSalus rid itself of excess inventory that was near expiration.  (*Id.* ¶ 13 ("ViSalus used Plaintiff's Amazon storefront as a means to rid itself of ViSalus inventory that was nearing expiration," *i.e.*, "to 'dump' the product on Amazon.").)

- Plaintiff states that he "helped [ViSalus] calculate how much product to have on hand and it assisted them with planning cash flow" by making large-volume purchases.  (*Id.* ¶ 84.)

Taking these allegations as true, Plaintiff earned almost $2 million while

helping further an alleged pyramid scheme—and now seeks damages because he

was "cut out."  (*E.g.*, *id.* ¶¶ 143–44.)  The wrongful conduct rule, or *in pari delicto*

doctrine, bars recovery on each of Plaintiff's claims.  *See Orzel*, 537 N.W.2d at

212–13 & n.11  (the *in pari delicto* doctrine precludes "relief to one wrongdoer

against another"); *see also In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d

599, 637 (E.D. Ky. 2011) ("to allow co-conspirators to recover from each other would not . . . deprive violators of their ill-gotten gains, but would transfer the ill-gotten gains between them").

Plaintiffs' claims fail for the additional reasons that follow.

## II.   <u>Plaintiff Fails To State A Claim For Promissory Estoppel (Count I).</u>

For a number of years, Plaintiff had an arrangement with ViSalus where he bought bulk product at a discount, sold it online at a profit, and received bonuses and commissions from ViSalus.  (Dkt. 33 ¶ 104.)  Plaintiff alleges that Defendants promised him this arrangement would continue, that he relied on that promise, and that Defendants later changed their minds.  (*Id.* ¶¶ 149–51.)  He seeks lost profits under a promissory estoppel theory.

Promissory estoppel is an equitable remedy "employed to alleviate an injustice resulting from strict adherence to established legal principles, such as those underlying the statute of frauds." *Natoma Grp., L.L.C. v. Dermal Def., Inc.*, 2006 WL 8431878, at *6 (E.D. Mich. Mar. 27, 2006).  "[F]or a promise to be enforceable under the concept of promissory estoppel, there must be a (1) promise that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (2) which in fact produced reliance or forbearance of that nature, (3) in circumstances such that the promise must be enforced if injustice is to be avoided." *Timko's Estate v. Oral Roberts Evangelistic Ass'n*, 215 N.W.2d 750, 752 (Mich. 1974).  "Where the parties have

an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996). Plaintiff's promissory estoppel claim fails for four reasons.

First, the alleged promise is not the proper subject of a claim for promissory estoppel. Plaintiff alleges he had a contract with Defendants, which they breached by terminating it. (Dkt. 33 ¶¶ 11, 104, 158.) The disputed issue, then, is whether the parties' contract was intended to be perpetual or whether ViSalus was entitled to end it. This sort of dispute is not proper grounds for an equitable claim for promissory estoppel. *Terry Barr*, 96 F.3d at 181 (promissory estoppel precluded where dispute is over the "terms, scope, or effect" of a contract).

Second, "[p]romissory estoppel requires an actual, clear and definite promise." *First Sec. Savs. Bank v. Aitken*, 573 N.W.2d 307, 317 (Mich. Ct. App. 1997); *Marrero v. McDonnell Douglas Cap. Corp.*, 505 N.W.2d 275, 278 (Mich. Ct. App. 1993) ("The sine qua non of promissory estoppel is a promise that is definite and clear."). The FAC sets out no "definite and clear" promise by *each* Defendant to perpetually permit Plaintiff "to purchase high volume orders of ViSalus product in exchange for receiving a discount on the product" or to "re-sell the product on Amazon at a discounted rate" using ViSalus' trademarks. (*Cf.* Dkt. 33 ¶ 149.) The FAC describes no "definite and clear" promise not to ever compete with Plaintiff. (*Cf. id.* ¶ 151.) To the contrary, Plaintiff makes vague,

11

group-pleaded, generalized assertions about the promises made and otherwise infers a promise based on Plaintiffs' course of dealing with Defendants.[7]  (*See id.* ¶¶ 149–50.)  Those allegations are not sufficient to state a claim for promissory estoppel.  *See State Bank of Standish v. Curry*, 500 N.W.2d 104, 109 (Mich. 1993) (past course of dealing does not constitute a "clear and definite" promise for purposes for promissory estoppel); *Etts v. Deutsche Bank Nat'l Tr. Co.*, 126 F. Supp. 3d 889, 903 (E.D. Mich. 2015) (rejecting promissory estoppel claim where plaintiffs failed to describe promise with particularity).

Third, Plaintiff fails to allege detrimental reliance on the alleged promise. He claims that he invested time, money, and energy to establish his online store (*e.g.*, Dkt. 33 ¶ 154), but he also admits that he realized significant profits by doing so.  (*Id.* ¶ 144.)  Thus, even if Plaintiff adequately alleged that each Defendant clearly promised to continue the secret sales arrangement (he has not done so), the facts in the FAC actually establish the *opposite* of detrimental reliance.

Fourth, injustice does not result without relief for Plaintiff, who seeks lost profits arising out of an arrangement that, according to Plaintiff, furthered an alleged pyramid scheme and caused injury to countless others.  *Marrero*, 505

---

[7] It is even unclear whether the alleged promisee was Plaintiff Michael Gehart, individually, Hercules Distributors LLC, the corporate entity through which Plaintiff operated his business (and which is not a party to this case), or some other entity through which Plaintiff operated his Amazon storefront(s).  (*See* Dkt. 33 at 45 & Exh. 4.)

N.W.2d at 278 ("The doctrine of promissory estoppel is cautiously applied."); *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 505 (Mich. Ct. App. 1992) (promissory estoppel should be applied "only where the facts are unquestionable and the wrong to be prevented undoubted.").

### III.   <u>Plaintiff's Tortious Interference Claim Fails (Count II).</u>

Plaintiff seeks damages for tortious interference with his business relationship with Amazon, on grounds that Defendants allegedly caused Amazon to prohibit him from selling ViSalus' products.  This claim fails for at least two reasons.

<u>First</u>, and consistent with the FAC as a whole, this claim relies on impermissible group pleading, with the various Defendants lumped together.  For example, Plaintiff claims that the tortious interference occurred when an attorney, "on behalf of, and at the direction of, ViSalus *and/or* Sarnicola *or* Mallen" filed a complaint with Amazon.  (Dkt. 33 ¶ 139 (emphasis added); *see also id.* ¶¶ 136, 139, 162–67.)  The Court has repeatedly rejected this pleading style.  *See, e.g.*, *Kerrigan v. ViSalus, Inc.*, 2018 WL 534485, at *4, 7 n.9 (E.D. Mich. Jan. 24, 2018); *see also Kerrigan v. ViSalus*, 112 F. Supp. 3d 580, 600–02 (E.D. Mich. 2015) (explaining that each Defendant is entitled to an individualized analysis of his own liability).

<u>Second</u>, taking Plaintiff's allegations as true, his Amazon sales are inextricably intertwined with the continued operation of an alleged illegal scheme,

and therefore the claim fails. 97 Am. Jur. Trials 107 ("Procuring the breach or hindering the performance of a contract that is illegal or violative of public policy is not actionable.") (citing *NCH Corp. v. Share Corp.*, 757 F.2d 1540 (5th Cir. 1985) (no cause of action will lie for tortious interference with a contract that violates public policy)); *see also Carruthers v. Flaum*, 365 F. Supp. 2d 448, 470 (S.D.N.Y. 2005) (plaintiff could not recover for tortious interference because his damages were "predicated on the completion of illegal activity" and "far too speculative predicated as they are on the coming to fruition of a project that is . . . presently illegal . . . ."); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1348 (S.D. Fla. 2006) ("It is beyond dispute that Alphamed cannot recover lost profits that are predicated on the completion of illegal activity.").

Plaintiff's claim for future lost profits from the sale of ViSalus' products on Amazon requires the Court to assume that ViSalus would have been required to sell products to Plaintiff in perpetuity.[8] Moreover, Plaintiff claims that he was able to profit from selling product on Amazon only because he received special dispensation to purchase the product at a steep discount (from an alleged "pyramid scheme masking as a wholesale distribution business"). (Dkt. 33 ¶¶ 16, 22, 25.) Plaintiff's own complaint establishes that, *without a special arrangement with*

---

[8] Plaintiff does not allege that Defendants interfered with his rights to sell *other companies' products* on Amazon; instead, he alleges that Defendants interfered with his sales of *ViSalus* products. (*See* Dkt. 33 ¶¶ 140, 160–61 & Exh. 7.)

*ViSalus*, he would not profit from Amazon sales.  Because Plaintiff alleges that that special arrangement furthers a pyramid scheme, his tortious interference claim fails.

## IV.   Plaintiff Does Not State A Claim For Unjust Enrichment (Count III).

Plaintiff claims Defendants unjustly enriched themselves by appropriating for themselves the "brand promotion and the good-will created over the years by Plaintiff on Amazon" without compensating him.   (Dkt. 33 ¶ 171.)   "Under Michigan law, the elements of an unjust enrichment claim are (1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain."  *Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc.*, 525 F. Supp. 2d 911, 921 (E.D. Mich. 2007).   Plaintiff's claim fails for at least two reasons.

First, the only benefit that Plaintiff alleges he conferred on Defendants was purchasing large volumes of product from ViSalus, which allowed ViSalus to "dump" excess inventory and "promot[e] [Plaintiff's] sales figures in order to encourage more distributors to join the ViSalus team." (Dkt. 33 ¶ 170.)  This claim fails under the *in pari delicto* doctrine, as explained above.  It also fails because Plaintiff admits that, in exchange for his purchases, he received steep product discounts, free product, and bonuses and commissions under the Compensation Plan.  (*See, e.g.*, *id.* ¶¶ 104, 150.)  Nothing in the FAC identifies a reason why *further* compensation to Plaintiff is warranted.

15

<u>Second</u>, Plaintiff has not pleaded facts establishing that Defendants' actions in preventing him from selling ViSalus products on Amazon conferred a benefit on each Defendant.   Plaintiff groups the Defendants together and claims, in conclusory fashion, that they "appropriat[ed] the brand promotion and the good-will created over the years." (*Id.* ¶ 171.)   Yet he does not explain how ***each*** Defendant went about availing himself of the market Plaintiff allegedly created. Plaintiff does not allege that Defendants literally took over his online storefront or even opened their own.[9]   Because Plaintiff does not plausibly plead that he conferred a benefit to each of the Defendants—one that the Court should, under principles of equity, order them to return—his unjust enrichment claim fails.

## V.   <u>Plaintiff's Shareholder Oppression Claim Fails (Count V).</u>

Plaintiff alleges that (i) he is a shareholder of ViSalus because he earned units in the Plan and (ii) ViSalus engaged in a litany of acts constituting "illegal, fraudulent and/or willfully unfair and oppressive conduct" toward him.   (Dkt. 33 ¶ 185.)   The obvious problem here is that Plaintiff is not a "shareholder" with standing under M.C.L. § 450.1489.   *See Meathe v. Ret*, 903 F. Supp. 2d 507, 520 (E.D. Mich. 2012) ("[I]n order to bring a claim for shareholder oppression, the

---

[9] Plaintiff suggests that Sarnicola stood to benefit from having a promoter in his downline "reap the benefits" of the online market for ViSalus' products that Plaintiff allegedly created.   (Dkt. 33 ¶ 138.)   This allegation is meaningless, however, because Plaintiff alleges he was part of Sarnicola's downline, too.   Thus, Sarnicola "would earn commissions and bonuses from the sales and recruiting activity performed by Plaintiff" just the same.   (*Id.* ¶ 48.)

plaintiff must presently be a shareholder."), *aff'd in relevant part*, 547 F. App'x 683 (6th Cir. 2013); M.C.L. § 450.1109(2) ("'Shareholder' means a person that holds units of proprietary interest in a corporation and is considered to be synonymous with 'member' in a nonstock corporation.").

Assuming that Plaintiff has pleaded that units in the Plan constitute actual shares of stock, Plaintiff does not allege he owned them at the time he filed his suit.[10]   To the contrary, he alleges that his "shares" had been wrongfully taken away. (*See, e.g.*, Dkt. 33 ¶ 193 ("[P]rior to his termination as a distributor, Plaintiff . . . was an owner and shareholder . . . ."); ¶ 194 ("Defendants have failed to maintain Plaintiff's position as an owner and shareholder of ViSalus . . . ."); *see also* ¶¶ 213, 221 (claiming entitlement to damages relating to the "loss" of Plaintiff's equity shares); ¶ 220 ("ViSalus is estopped from refusing to grant Plaintiff the shares that he earned").  Further, because Plaintiff does not allege he is a shareholder, Plaintiff cannot allege an "injury to his interests *as a shareholder,*" as required to state a claim for shareholder oppression.  *See Meathe*, 547 F. App'x at 689 (emphasis added) (shareholder oppression claim protects the "interests of the shareholder *as a shareholder*").  This claim should be dismissed.

---

[10] Defendants do not concede that units in the Plan are "stock" in ViSalus or otherwise confer, on anyone, a proprietary interest in ViSalus.  Although in the related *Byrd* litigation, the Court ruled (at the motion to dismiss stage) that the plaintiffs had sufficiently alleged that units in the Plan were securities, Defendants reserve the right to re-visit this argument at a later time.

## VI.   __The Breach of Fiduciary Duty Claim Fails (Count VI)__.

Plaintiff claims Defendants breached their fiduciary duties owed as majority shareholders to him—an alleged minority shareholder—by, among other things, failing to provide certain information, failing to pay distributions, and terminating Plaintiff's promotorship and Amazon sales.  (Dkt. 33 ¶¶ 185, 190.)  Taking as true Plaintiff's allegation that he was a shareholder at some point in time, this claim fails because, as a matter of law, Defendants owed no fiduciary duties to him.

Whether Defendants owed Plaintiff a fiduciary duty is related to the internal affairs of ViSalus.  Because ViSalus is a Nevada corporation, Nevada law applies.  *See Productivity Techs. Corp. v. Levine*, 268 F. Supp. 3d 940, 947 (E.D. Mich. 2017).  Under Nevada law, only majority shareholders of *closely-held* corporations owe fiduciary duties to minority shareholders.  *Simon v. Mann*, 373 F. Supp. 2d 1196, 1199 (D. Nev. 2005).  Taking as true Plaintiff's allegations regarding the Plan (including the allegation that shares in the Plan were intended to be shares in ViSalus itself), ViSalus was not "closely-held."  (Dkt. 33 ¶¶ 215, 217 (alleging that "2,000 families" participated in the Plan); *see also* Gehart Declaration, Exh. A (acknowledging putative class of thousands of participants in Plan); *Simon*, 373 F. Supp. 2d at 1200 ("'Closely held' seems to focus more on the number of shareholders in the corporation at that particular time, indicating that they are few in number.").  Plaintiff fails to state a claim for breach of fiduciary duty.

**VII. Plaintiff's Conversion Claim Fails (Count VII).**

"Common law conversion under Michigan law involves any distinct act of dominion wrongfully exerted over another person's personal property in denial of or inconsistent with his rights therein." *Byrd v. ViSalus, Inc.*, 2018 WL 1637948, at *13 (E.D. Mich. Apr. 5, 2018). Statutory conversion is conversion "to the other person's own use." *Id.* at *14 (quoting M.C.L. § 600.2919a(1)(a)).

Here, Plaintiff claims Defendants engaged in conversion by "wrongfully exert[ing] dominion and control over Plaintiff's equity interests." (Dkt. 33 ¶ 194.) This allegation fails to state a claim for several reasons. First, Plaintiff's group pleading approach (*see id.* ¶¶ 194–96) fails to describe personal participation or a direct role in the alleged conversion as to any specific Defendant. *See Byrd*, 2018 WL 1637948, at *14 (dismissing conversion claim against individual defendants where plaintiffs failed to allege that they "personally played a role" in the specific transaction through which plaintiffs' property was converted).

Second, Plaintiff has not described any "distinct act of dominion" over Plaintiff's property. The acts alleged to constitute "dominion" are vague—*e.g.*, "fail[ing] to maintain Plaintiff's position as an owner"—and amount to failures to act to *create* a property interest—not convert one. (Dkt. 33 ¶ 194 (alleging Defendants "failed to pay him distributions" and "to otherwise purchase his equity shares"). Plaintiff does not plausibly allege that Defendants wrongfully *took and retained* his specific personal property.

<u>Third</u>, Plaintiff fails to describe how any Defendant converted funds "for some purpose personal to the [D]efendant's interests," as required for a statutory conversion claim. *Byrd*, 2018 WL 1637948, at \*14; *see also Sutter v. Ocwen Loan Servicing, LLC*, 2016 WL 3003346 at \*4 (Mich. App. May 24, 2016) (statutory conversion claim failed where "plaintiffs did not assert that defendant employed [plaintiffs' personal property] for some purpose personal to defendant's interests"). To the contrary, Plaintiff's allegations explain that, to the extent Plaintiff's shares were taken away from him, they were returned to the "pot" and redistributed among the other participants in the Plan.  (Dkt. 33 ¶ 109 (alleging that the Plan "provides *Promotors* [sic] with an ownership equivalent to 6% of the company . . . *shared among four equity groups, based on your Paid Rank each month*").) Plaintiff fails to state a claim for conversion against any Defendant.

## VII.   <u>Plaintiff's FEIP Promissory Estoppel Claim Fails (Count IX).</u>

Plaintiff presses a second claim for promissory estoppel, claiming that he detrimentally relied on promises related to the Plan by "foregoing any other investment or business opportunities."[11]   (Dkt. 33 ¶¶ 218–19.)   He argues that

---

[11] The notion that Plaintiff "detrimentally" relied on anything is incredible, given that (i) Plaintiff alleges he made **substantial** sums of money engaging in the conduct that qualified him for shares in the Plan, and (ii) he seeks lost profits in Counts I–III based on his inability to continue that conduct.   Nonetheless, Defendants must take this allegation as true for purposes of Plaintiff's claims for misrepresentation and promissory estoppel.

"ViSalus is estopped from refusing to grant [him] the shares that he earned as a result of these promises and representations." (*Id.* ¶ 220.)

This dispute is not the proper subject for a promissory estoppel claim. As stated above, enforcement of a promise under the promissory estoppel doctrine requires "circumstances such that the promise must be enforced if injustice is to be avoided." *Timko's Estate*, 215 N.W.2d at 752. Here, Plaintiff alleges that the promises about the Plan caused him to more fervently engage in conduct *that he admits made him substantial sums of money and that he claims furthered a pyramid scheme that caused people to lose money*. Justice does not require enforcement of Defendants' alleged promises as to the Plan. *See, e.g.*, *Maxwell v. Bay City Bridge Co.*, 2 N.W. 639 (Mich. 1879) (estoppel requires serious prejudice to the plaintiff if promise is dishonored).[12]

## CONCLUSION

Defendants respectfully request that the Court dismiss the FAC in its entirety, with prejudice.

---

[12] Count IV purports to state a claim for declaratory relief. But declaratory relief is not a stand-alone claim in federal court—it is a remedy. *McCann v. U.S. Bank, N.A.,* 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012). Plaintiff's request for declaratory relief should be denied because each of Plaintiff's other claims fail under the *in pari delicto* doctrine and the other grounds identified herein.

Dated:  May 31, 2018

Respectfully submitted,

By:   /s/Nicholas B. Gorga
Attorney for Defendants ViSalus, Inc., Nick Sarnicola, and Blake Mallen

QUARLES & BRADY LLP

Kevin D. Quigley (AZ Bar #015972)
Edward A. Salanga (AZ Bar #020654)
Brian A. Howie (AZ Bar #026021)
Michael S. Catlett (AZ Bar #025238)
*All Admitted to Practice in ED MI*
One Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004
Telephone Number: (602) 229.5200
kevin.quigley@quarles.com
edward.salanga@quarles.com
brian.howie@quarles.com
michael.catlett@quarles.com

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Nicholas B. Gorga (P72297)
Andrew W. Clark (P79165)
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226-3506
Telephone Number: (313) 465-7640
Fax Number: (313) 465-7641
ngorga@honigman.com
aclark@honigman.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

By: /s/Nicholas B. Gorga
Attorney for the Defendants