UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GERHART,                                    Case No. 17-cv-12132
                                                   Hon. Matthew F. Leitman
          Plaintiff,

v.

VISALUS, INC., a corporation,
NICK SARNICOLA, BLAKE MALLEN,
and RYAN BLAIR,

          Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT**

## STATEMENT OF THE ISSUES PRESENTED

I.  Whether the Plaintiff's claims survive Defendants' assertion of the doctrine of *in pari delicto*?

> ➢ Plaintiff answers: Yes.
> ➢ Defendants answer: No.

II.  Whether Plaintiff has stated sufficient facts to support his claim for promissory estoppel for continued commission payments from ViSalus based on the promises Defendants made to him regarding his operation of the Amazon storefront?

> ➢ Plaintiff answers: Yes.
> ➢ Defendants answer: No.

III.  Whether Plaintiff has stated a claim for tortious interference with contract?

> ➢ Plaintiff answers: Yes.
> ➢ Defendants answer: No.

IV.  Whether Plaintiff has stated a claim for unjust enrichment based on the benefit Plaintiff conferred on Defendants in creating the Amazon storefront?

> ➢ Plaintiff answers: Yes.
> ➢ Defendants answer: No.

V.  Whether Plaintiff has stated a claim for shareholder oppression?

> ➢ Plaintiff answers: Yes.
> ➢ Defendants answer: No.

VI.  Whether Plaintiff has stated a claim for breach of fiduciary duty?

> ➢ Plaintiff answers: Yes.
> ➢ Defendants answer: No.

VII.  Whether Plaintiff has stated a claim for conversion?

&#9655; Plaintiff answers: Yes.
&#9655; Defendants answer: No.

VIII.   Whether Plaintiff has stated a claim for promissory estoppel based on the promises Defendants made to him about earning equity in ViSalus?

&#9655; Plaintiff answers: Yes.
&#9655; Defendants answer: No.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

I.    On the issue of why the *in pari delicto* doctrine does not apply:

- ➢ *Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995)

II.    On the issue of whether Plaintiff states a promissory estoppel claim, based on the promises Defendants made to his regarding the operation of his Amazon storefront:

- ➢ *United Sates Specialty Ins. Co. v. CAASTI Professional Contracting Serv.*, No. 16-14401, 2017 U.S. Dist. LEXIS 65494 (E.D. Mich. 2017); and
- ➢ *Miller v. Herskovic*, No. 263250, 2006 Mich. App. LEXIS 3565 (Mich. Ct. App. 2006)

III.    On the issue of shareholder oppression:

- ➢ *Franchino v. Franchino*, 687 N.W.2d 620 (Mich. Ct. App. 2004).

IV.    On the issue of breach of fiduciary duty (and why Michigan law applies):

- ➢ *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466 (Mich. 1997)

V.    On the issue of conversion:

- ➢ *Stoddard v. Manufacturers Nat'l Bank*, 593 N.W.2d 630 (Mich. Ct. App. 1999).

VI.    On the issue of whether promissory estoppel can be used to enforce the promises Defendants made to grant Plaintiff equity in ViSalus:

- ➢ *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546 (Mich. Ct. App. 1999)

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ......................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. iii

TABLE OF CONTENTS ..................................................................................... iv

INDEX OF AUTHORITIES .............................................................................. vi

INDEX OF EXHIBITS ...................................................................................... vii

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ........................................................................................ 2

    A.    The Parties. ......................................................................................... 2

    B.    The ViSalus Operation. ...................................................................... 2

    C.    Sarnicola Recruits Plaintiff To ViSalus. ........................................... 3

    D.    Plaintiff Learns There Is No Money To Be Made Through The
        ViSalus Operation, So He Focuses His Efforts On Selling The
        ViSalus Product Through Amazon. ..................................................... 3

    E.    Given His Success With His Amazon Sales, Plaintiff Earns An Equity
        Interest In ViSalus. ............................................................................. 5

    F.    Defendants Renege On Their Agreements With Plaintiff, Claim To
        Strip His Equity, And Unlawfully Shutter His Amazon Storefront ...... 7

II.   ARGUMENT ............................................................................................. 8

    A.    The In Pari Delicto Doctrine Does Not Bar Plaintiff's Claims. ........... 8

        1.    Defendants' In Pari Delicto Argument Is Based On The
            Incorrect Assumption That Plaintiff Has Only Plead That This
            Was An Illegal Pyramid Scheme. ............................................... 8

        2.    In Pari Delicto Only Applies To Bar Claims Between Co-Equal
            Wrongdoers, It Does Not Apply To Bar Claims Brought By
            Someone Who Is Less At Fault. ................................................ 10

    B.    Plaintiff Has Stated A Claim For Promissory Estoppel Regarding His
        Right To Continued Commission Payments From ViSalus. .............. 13

C.     Plaintiff Has Stated A Claim For Tortious Interference With His Business Relationship With Amazon..................................................17

D.     Plaintiff Has Stated A Claim For Unjust Enrichment........................18

E.     Plaintiff Has Stated A Claim For Shareholder Oppression.................19

F.     Plaintiff Has Stated A Claim For Breach Of Fiduciary Duty. ............20

G.     Plaintiff Has Stated A Claim For Conversion....................................23

H.     Plaintiff Has Stated A Claim For Promissory Estoppel To Enforce His Right To The Equity He Earned In ViSalus........................................24

III.   CONCLUSION...............................................................................25

# <u>INDEX OF AUTHORITIES</u>

## <u>Cases</u>

*Asmar v. Detroit News, Inc.*, 836 F.2d 1347 (6th Cir. 1988)...................................13

*Caldwell v. PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510 (S.D. Ohio 2011) ......9

*Engel Mgmt. v. Ford Motor Credit Co.*, No. 279868, 2009 Mich. App. LEXIS 317, (Mich. Ct. App. 2009)...........................................................................................21

*Franchino v. Franchino*, 687 N.W.2d 620 (Mich. Ct. App. 2004) ................... iii, 20

*Globaltex Group Ltd. v. Trends Sportswear Ltd.*, No. 09-CV-0235, 2010 U.S. Dist. LEXIS 39085 (E.D.N.Y. 2010) ...........................................................................12

*In re FCA LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich 2017) ......................................................................................................................9

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)....................................21

*Miller v. Herskovic*, No. 263250, 2006 Mich. App. LEXIS 3565 (Mich. Ct. App. 2006) ................................................................................................................ iii, 15

*New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495 (6th Cir. 2003) ......................................................................................13

*Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546 (Mich. Ct. App. 1999) .. iii, 25

*Olmstead v. Anderson*, 400 N.W.2d 292 (Mich. 1987) ...........................................21

*Orzel v. Scott Drug Co.*, 537 N.W.2d 208 (Mich. 1995)................................... iii, 11

*Pacurib v. Villacruz*, 705 N.Y.S.2d 819 (N.Y. Civ. Ct. 1999)................................11

*Productivity Techs. Corp. v. Levine*, 268 F. Supp. 3d 940 (E.D. Mich. 2017) .......22

*Simon v. Mann*, 373 F. Supp. 2d 1196 (D. Nev. 2005)...........................................22

*Stoddard v. Manufacturers Nat'l Bank*, 593 N.W.2d 630 (Mich. Ct. App. 1999) . iii, 24

*Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466 (Mich. 1997).... iii, 21

*Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174 (6th Cir. 1996)..........14

*United Sates Specialty Ins. Co. v. CAASTI Professional Contracting Serv.*, No. 16-14401, 2017 U.S. Dist. LEXIS 65494 (E.D. Mich. 2017).............................. iii, 14

## **Rules**

Fed R. Civ. P. 57 ....................................................................................19

Fed R. Civ. P. 8(d) .................................................................................20

Fed. R. Civ. P. 8(d) ........................................................................... 10, 14

Fed. R. Civ. P. 8(a)(3)............................................................................9

Fed. R. Civ. P. 12(b)(6)......................................................................9, 13

## **Statutes**

Mich. Comp. Laws Ann. § 450.1489....................................................20

## <u>INDEX OF EXHIBITS</u>

**<u>Exhibit 1</u>**:   Letter from Edward Salanga to Kenneth Neuman dated April 10, 2018

**<u>Exhibit 2</u>**:   Letter from Jennifer Grieco to Edward Salanga dated April 17, 2018

## I. __INTRODUCTION__

This action presents the unique question of what happens when a recruit of what otherwise appears to be a pyramid scheme, casts off the shackles of the scheme and legitimately sells the product in the marketplace. Plaintiff Michael Gehart was recruited into a pyramid scheme/multi-level marketing program run by defendant ViSalus, Inc., which was originally owned, organized, and promoted by defendants Nick Sarnicola, Blake Mallen, and Ryan Blair. Gehart eventually realized that he would not make much money running the ViSalus business in the manner suggested by Sarnicola, Mallen, and Blair – i.e., by recruiting new distributors and convincing them to buy the ViSalus product to sell to other recruits. Instead, Gehart recognized that there was a market for the ViSalus product through an Amazon storefront and he worked diligently to identify, reach, and build that market into a highly successful business. But when Defendants realized they could replicate Plaintiff's success and cut him out of the picture, they used illegal, fraudulent and unethical means to do so.

Defendants filed this motion to dismiss this action.[1] The overarching theme of Defendants' motion is that because Plaintiff and Defendants were engaged in an

---

[1] At a March 1, 2018 telephone conference in this matter, this Court asked that before Plaintiff filed an amended complaint, he send a copy of that proposed amended complaint to Defendants. This Court instructed Defendants to review and identify criticisms of the proposed amended complaint that would cause them to file a motion to dismiss and that Plaintiff consider those criticisms and revise his proposed amended complaint to address those criticisms. Plaintiff sent his proposed amended complaint to Defendants on March 14, 2018; Defendants sent a letter with their

illegal pyramid scheme, the doctrine of *in pari delicto* – that the law will not aide one wrongdoer in seeking relief against his co-equal wrongdoers - shields them from liability. But that argument misses the mark for two reasons: (1) it ignores the alternatively pled facts in this action; and (2) it misapplies the doctrine of *in pari delicto* because Plaintiff and Defendants were not equals in the operation of any pyramid scheme. Additionally, Defendants' arguments for dismissing the particular individual counts stated by Plaintiff against them fail because they rely on ignoring facts pled in the first amended complaint. This Court should deny this motion.

## II.   BACKGROUND

### A.   The Parties.

Plaintiff Michael Gehart has 35-years of experience in sales and as an entrepreneur. (First Amended Complaint ("FAC") at ¶39). ViSalus holds itself out as a multi-level marketing company, which sells shakes it claims promote weight loss. (*Id*. at ¶31). Defendants Sarnicola, Mallen, and Blair are the "co-founders" of ViSalus; all three are shareholders in the company; and all three are involved in the executive management of the company. (*Id*. at ¶¶24-27).

### B.   The ViSalus Operation.

---

criticisms on April 10, 2018 (**Ex. 1**); Plaintiff revised his proposed amended complaint and sent a letter explaining why he made certain changes and why other criticisms raised by the Defendants were not valid on April 17, 2018. (**Ex. 2**). Plaintiff attached these letters to this response not as substantive evidence, but to comply with this Court's directive from the earlier telephone conference.

While ViSalus claims that it is a company that sells meal replacement shakes, snacks, and vitamin supplements, the bulk of ViSalus' operation is constantly recruiting new "distributors" to buy the product from existing "promoters" to generate commission on sales for the exiting promoters. (*Id*. at ¶2). New distributors are told that they can buy the product at "wholesale" prices; sell it at "retail" prices, making money on each transaction. (*Id*. at ¶¶35-36). ViSalus tells new distributors that they can make the most money by becoming a promoter, recruiting additional new distributors, and earning significant commissions from products ordered by new distributors who are placed in the promoter's "down-line". (*Id*.).

### C.    Sarnicola Recruits Plaintiff To ViSalus.

In February 2010, Plaintiff attended a meeting at ViSalus' corporate offices in Troy, Michigan and learned about the ViSalus operation. (*Id*. at ¶¶41-42). Afterwards, Plaintiff attended a more personal lunch meeting with Sarnicola in which Plaintiff stated that while he had prior sales experience, he had no experience with multi-level marketing. (*Id*. at ¶43). Following the lunch meeting, Plaintiff signed on as a distributor in Sarnicola's down-line. (*Id*. at ¶48).

### D.    Plaintiff Learns There Is No Money To Be Made Through The ViSalus Operation, So He Focuses His Efforts On Selling The ViSalus Product Through Amazon.

Throughout 2010 and 2011, Plaintiff followed the sales model offered by ViSalus – hosting "challenge parties' and inviting family and friends to joining the

ViSalus marketing team. (*Id*. at ¶49). Plaintiff also tried methods he had learned and used before in traditional sales, such as product giveaways, search engine optimization, and "cold calls." (*Id*. at ¶¶49-51). Those techniques yielded a modest sales volume, but nothing close to what Sarnicola promised. (*Id*. at ¶¶51-52). By November 2012, Plaintiff had built a "down-line" of other distributors sufficient to make him an "Ambassador" with ViSalus, however, Plaintiff found that these down-line distributors rarely sold to more than one or two customers (usually family and friends). (*Id*. at ¶53).

Having exhausted the sales model promoted by ViSalus and seeing little return on his time and investment in that model, Plaintiff charted a new course. (*Id*. at ¶61). Plaintiff, who believed there was a market for the ViSalus product at a lower price point, decided to shift his focus from recruiting new distributors and instead to focus on simply selling the product himself. (*Id*.). Plaintiff's focus on selling the product led him to develop an Amazon storefront. (*Id*. at ¶¶62-63). Plaintiff's Amazon storefront offered ViSalus products for sale to the public at large. (*Id*. at ¶63). Plaintiff developed the Amazon storefront, fulfilled orders quickly and responsively and developed superior customer ratings, which gave Plaintiff's storefront a competitive advantage in selling similar products through Amazon. (*Id*. at ¶80). Plaintiff developed a remarkable sales channel for selling ViSalus products

online to ordinary consumers – generating millions of dollars per year in sales of the product to people that actually used the product.  (*Id*. at ¶81).

Plaintiff recognized that his development of the Amazon storefront was unorthodox and different from the model urged by ViSalus.  (*Id*. at ¶61).  So, at every step of the way, Plaintiff informed ViSalus of his intentions with the Amazon storefront and obtained ViSalus' permission to operate the storefront - including using several exceptions and discounts to purchase bulk quantities of ViSalus product at lower prices than other distributors.  (*Id*. at ¶¶69-78).

### E.   Given His Success With His Amazon Sales, Plaintiff Earns An Equity Interest In ViSalus.

Given Plaintiff's success with sales through his Amazon storefront, Defendants identified Plaintiff to participate in what Sarnicola, Mallen and Blair called the "Founders Equity Incentive Program."  (*Id*. at ¶115).  In a series of brochures, presentations, and videos posted to YouTube, Sarnicola, Mallen, and Blair stated that they had "purchased back" ViSalus and as a part of that purchase, they set aside 6% of the company to grant to the top selling ViSalus distributors. (*Id*. at ¶116).  Sarnicola, Mallen, and Blair told ViSalus distributors, including Plaintiff, that they too could "own the company." (*Id*. at ¶114). Sarnicola, Mallen, and Blair promised Plaintiff that the shares he earned in ViSalus were "for life" and that Plaintiff would continue to own shares in the company even if he was not a distributor. (*Id*. at ¶118). Sarnicola, Mallen, and Blair promised Plaintiff that he

could continue earning additional shares in ViSalus on an ongoing basis, based on his sales production. (*Id*. at ¶129).

Motivated by the promise of an equity interest in ViSalus, Plaintiff redoubled his efforts to sell the ViSalus product. (*Id*. at ¶120). Plaintiff made extra purchases and carried inventory. (*Id*.). Plaintiff invested money that he would have otherwise reserved for his own personal retirement/savings, to pay bonuses to his down-line distributors to motivate them to increase their sales so that he could earn additional promised shares in ViSalus. (*Id*. at ¶129). Plaintiff turned down other business opportunities to remain focused on improving his Amazon storefront and earning all the promised equity he could. (*Id*. at ¶130).

In April 2015, ViSalus, consistent with the promises made by Sarnicola, Mallen, and Blair, awarded Plaintiff equity shares in ViSalus. (*Id*. at ¶122). ViSalus presented Plaintiff with a certificate, signed by Sarnicola, Mallen, and Blair recognizing that he had earned and been awarded shares in the company. (*Id*. at ¶123 and Ex. 3). Sarnicola, Mallen, and Blair each specifically told Plaintiff that he was a shareholder of ViSalus. (*Id*.). ViSalus recognized Plaintiff as a shareholder at several company events by calling him on stage for the recognition; it also provided him with hats and other trinkets labeled with the phrase "I OWN IT." (*Id*.) After April 2015, ViSalus allowed Plaintiff to participate in shareholder meetings and calls.

(*Id*.). By June 2017, ViSalus represented to Plaintiff that he owned 1,135 shares of ViSalus. (*Id*. at ¶132 and Ex. 4).

**F.      Defendants Renege On Their Agreements With Plaintiff, Claim To Strip His Equity, And Unlawfully Shutter His Amazon Storefront.**

In June 2017, Sarnicola and Mallen decided it was more lucrative for ViSalus to operate the ViSalus Amazon storefront than to allow Plaintiff to do so. (*Id*. at ¶136).  Sarnicola hatched a plan to halt Plaintiff's sales through Amazon and use the goodwill and advantageous customer reviews and experiences with sales of ViSalus through Amazon for his own personal benefit, and for the benefit of Mallen and ViSalus. (*Id*.). Sarnicola had an attorney send a letter on behalf of ViSalus to Amazon accusing Plaintiff of infringing on ViSalus' trademark by operating Plaintiff's Amazon storefront. (*Id*. at 137).  This claim was, of course, false because Plaintiff had operated the Amazon storefront selling ViSalus products for years with the direct permission of ViSalus. (*Id*. at ¶¶69-78).  Nevertheless, Sarnicola knew that once a potential trademark infringement claim was made to Amazon it would move immediately to shut down the storefront and investigate later. (*Id*. at ¶137).  Sarnicola's fraudulent plan worked to perfection - Amazon shut down Plaintiff's storefront based on the fraudulent claims made by ViSalus. (*Id*. at ¶140).

At the same time, ViSalus terminated Plaintiff's status as a distributor with ViSalus, claimed to strip away his equity interest in ViSalus, froze his accounts, and refused to make any further payments to Plaintiff whatsoever.  (*Id*. at ¶¶146-147).

ViSalus now denies that Plaintiff is a shareholder and will not allow him to exercise any of his rights as a shareholder, refuses to pay him any commissions, and refuses to allow him to operate his Amazon storefront. (*Id.*).

## II. <u>ARGUMENT</u>[2]

### A. The In Pari Delicto Doctrine Does Not Bar Plaintiff's Claims.

The thrust of Defendants' motion is that the doctrine of *in pari delicto* bars all of Plaintiff's claims. Defendants argue that because the FAC alleges that Defendants were operating an illegal pyramid scheme, Plaintiff cannot maintain any action against them because that would require this Court to enforce the illegal pyramid scheme. But this argument misses the mark for two independent reasons: (1) it fails to account for the fact that Plaintiff has plead alternatively in this action – plead both that ViSalus was an illegal pyramid scheme and that ViSalus was a legitimate multi-level marketing company; and (2) it misapplies the doctrine of *in pari delicto* to a situation in which the parties are not co-equal wrongdoers.

#### 1. *Defendants' In Pari Delicto Argument Is Based On The Incorrect Assumption That Plaintiff Has Only Plead That This Was An Illegal Pyramid Scheme.*

Defendants' argument is chiefly animated by the assumption that they "must take as true Plaintiff's allegation that ViSalus operates a pyramid scheme." But this assumption is flawed for three reasons.

---

[2] Plaintiff does not contest the Standard of Review stated by Defendants.

First, the FAC is not based on the certainty that ViSalus was a pyramid scheme. Rather, the FAC alleges that "ViSalus may or may not be a pyramid scheme." (FAC at Introduction p. 1 and ¶16). Moreover, Defendants' suggestion that Plaintiff is bound by its original complaint (in which it alleged that ViSalus operated a pyramid scheme) is completely without merit. This Court granted Plaintiff the right to amend his complaint to make changes and address issues raised by Defendants in opposition to the original complaint. Defendants cannot now seriously claim that this Court should ignore the changes made by Plaintiff in the FAC. Further, relying on statements made in the original complaint would require this Court to look beyond the "four corners" of the FAC, which exceeds confines of Rule 12(b)(6). *See In re FCA LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (E.D. Mich 2017).   Additionally, the case relied upon by Defendants for the proposition that statements made in the original complaint (which is superseded by an amended complaint) are admissions - actually says the exact opposite. *See Caldwell v. PNC Fin. Servs. Grp., Inc.*, 835 F. Supp. 2d 510, 516 n.1 (S.D. Ohio 2011) ("Plaintiff is entitled to plead claims for relief in the alternative. Fed.R.Civ.P. 8(a)(3). While paragraph 73 might be an admission for purposes of the ERISA claim, the court will not consider paragraph 73 as an admission for purposes of the preemption issue.").

Second, the core allegations in the FAC are that Plaintiff's "entrepreneurial efforts allowed him to create a successful and legal business operating within what

he has only recently come to believe may be an otherwise illegal pyramid scheme being run by the co-founders and owners of ViSalus." (FAC at ¶16). Plaintiff's theory of the case is that he set aside the business model established by ViSalus – which "may or may not be a pyramid scheme" - and instead devoted himself to developing a business model in which he legitimately sold the product to end-user consumers. (*Id*.). The FAC demonstrates Plaintiff is not using this action for the purpose of having this Court enforce a pyramid scheme; Plaintiff is using this action to recover what he is owed for legitimately selling a product on behalf of ViSalus.

Third, Defendants' assumption that the FAC is based solely on the position that "ViSalus was an illegal pyramid scheme" denies Plaintiff his right under Rule 8(d) to plead facts and legal theories in the alternative. Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or separate ones."). Indeed, the language of the FAC shows that Plaintiff is pleading two alternative sets of facts. (FAC at Introduction and ¶16) ("ViSalus is a multi-level marketing company that may or may not be an illegal pyramid scheme[.]") Accepting Defendants' assumption in support of its *in pari delicto* argument denies both the fact that Plaintiff plead alternatively and Plaintiff's right to do so.

2. ***In Pari Delicto Only Applies To Bar Claims Between Co-Equal Wrongdoers, It Does Not Apply To Bar Claims Brought By Someone Who Is Less At Fault.***

This Court should, as an alternative reason for rejecting Defendants' *in pari delicto* argument, find that the doctrine of *in pari delicto* has no application to the facts alleged by Plaintiff. The Michigan Supreme Court explained: "[n]otwithstanding these compelling reasons for applying the wrongful-conduct rule in all cases in which Plaintiff's claim is based on his illegal conduct, the wrongful-conduct rule is a general rule, and, like all general rules, it has its limitations and exceptions." *Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 214 (Mich. 1995). One of the critical exceptions is that the *in pari delicto* rule only applies when plaintiff and defendant are equally culpable for the illegal conduct. *Orzel, supra.*

> An exception to the wrongful-conduct rule may apply where both Plaintiff and defendant have engaged in illegal conduct, but the parties do not stand *in pari delicti*. In other words, even though a plaintiff has engaged in serious illegal conduct and the illegal conduct has proximately caused Plaintiff's injuries, a plaintiff may still seek recovery against the defendant if the defendant's culpability is greater than Plaintiff's culpability for the injuries, such as where Plaintiff has acted under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age.

*Id. at* 569 (citations and internal quotation marks omitted); *see also Pacurib v. Villacruz*, 705 N.Y.S.2d 819, 829 (N.Y. Civ. Ct. 1999) (Doctrine of *in pari delicto* would not apply in the context of a pyramid scheme against "the original founders" who are differently situated than the "recruits"); *accord. Globaltex Group Ltd. v. Trends Sportswear Ltd.*, No. 09-CV-0235, 2010 U.S. Dist. LEXIS 39085 at *11

(E.D.N.Y. 2010) (Denying summary judgment on *in pari delicto* defense where there was a "genuine issue of material fact as to the parties' relative levels of fault.")

Here, the FAC is replete with allegations that Defendants stood in a superior position to Plaintiff in the operation of ViSalus (the allegedly "illegal activity"). Specifically, the FAC alleges that the three individual defendants were the founders of ViSalus. (*Id*. at ¶¶24-27). The three individual defendants were the ones that established the business model of ViSalus and they promoted the ViSalus business model to people like Plaintiff. (*Id*.). The three individual defendants ran the day-to-day management and operations of the company; they were the officers and directors of the company. (*Id*.). Plaintiff had no experience with, and no knowledge about, how multi-level marketing programs worked. (*Id*. at ¶43). Sarnicola had Plaintiff as part of his down-line, meaning that Plaintiff's sales were credited to Sarnicola for the purpose of paying Sarnicola a commission. (*Id*. at ¶48).  Plaintiff repeatedly asked members of the ViSalus management team (including the individual defendants and those designated by them) for approval to create and conduct the Amazon storefront hat he developed for ViSalus. (*Id*. at ¶¶69-78).  Plaintiff's equity interest in ViSalus arose because of an incentive plan developed by the individual Defendants and ViSalus to bargain away a small portion of their equity in exchange for further sales of their product.  (*Id*. at ¶¶107-08).

In terms of running the management and operations of ViSalus, Defendants had far more power than Plaintiff to control the direction and operation of the company. (*Id*. at ¶¶24-72, 48, 69-78, 107-08).  The three individual defendants who founded the company, created its business model, and managed its day-to-day operations, had far greater power to control the activity of the company (and make certain that activity was lawful) than Plaintiff who was one of the many people ViSalus used to sell its product. (*Id*. at ¶¶24-27).  The fact that Plaintiff had to obtain approval for the manner in which he operated his portion of the business – which was different from the business model established by Defendants - demonstrates that Defendants had greater control of the business operation than Plaintiff and that Plaintiff and Defendants cannot be considered "equally culpable" on the question of whether or not ViSalus operated an illegal pyramid scheme.[3]

**B.     Plaintiff Has Stated A Claim For Promissory Estoppel Regarding His Right To Continued Commission Payments From ViSalus.**

Defendants argument that Plaintiff fails to state a claim for promissory estoppel regarding his right to receive commissions on sales made in his down-line

---

[3] Defendants' use of an affidavit as part of their argument under Rule 12(b)(6) is inappropriate. *Asmar v. Detroit News, Inc.*, 836 F.2d 1347 (6th Cir. 1988) ("a trial court cannot rely on an affidavit for a Rule 12(b)(6) dismissal."). The case relied upon by Defendants, *New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495, 501 (6th Cir. 2003) had nothing to do with the use of an affidavit in evaluating a Rule 12(b)(6) motion; instead it merely condoned the court taking judicial notice of the fact that plaintiff filed a similar claim against another defendant for purposes of determining when plaintiff had notice of a claim.

is incorrect.  First, Defendants' assertion that the promissory estoppel claim is barred because the only dispute between the parties is over the terms, scope, or effect of a contract is both factually and legally incorrect. Factually, Plaintiff has not made a claim in the FAC for breach of contract. Thus, it is not the case that Plaintiff is seeking to both recover under theories of breach of contract and promissory estoppel. Nevertheless, even if Plaintiff had alleged claims for both promissory estoppel and breach of contract, both claims can proceed at this point because Plaintiff is allowed to plead alternate and inconsistent theories. Fed. R. Civ. P. 8(d); *see also United Sates Specialty Ins. Co. v. CAASTI Professional Contracting Serv.*, No. 16-14401, 2017 U.S. Dist. LEXIS 65494 at *5-6 (E.D. Mich. 2017). Likewise, Defendants' reliance on *Terry Barr Sales Agency, Inc. v. All-Lock Co*., 96 F.3d 174, 181 (6th Cir. 1996) is misplaced because in that action the court affirmed the dismissal of Plaintiff's promissory estoppel claim on summary judgment, where the parties had stipulated there was a written contract between them that governed their rights and duties. *Id*. ("For purposes of summary judgment, All-Lock conceded the existence of a contract between the parties."). Here, there is no such stipulation.

Second, Defendants' claim that Plaintiff has not identified an "actual, clear and definite promise made to him is belied by the FAC, which contains the following allegations:

> 149.  ViSalus, Sarnicola, Mallen, and Blair each promised Plaintiff that he was authorized to sell ViSalus product on Amazon and further

promised that he would be permitted to purchase high volume orders of ViSalus product in exchange for receiving a discount on the product and the ability to re-sell the product on Amazon at a discounted rate. In addition, ViSalus promised to pay Plaintiff for the purchases under the Compensation Plan.

***

151. Defendants Sarnicola, Mallen and Blair further promised Plaintiff that ViSalus would not act to compete directly with Plaintiff on Amazon or seek to take over his Amazon storefront.

(FAC at ¶¶149 and 151).

Third, Plaintiff has alleged facts demonstrating detrimental reliance sufficient to support his claim for promissory estoppel. "Detrimental reliance is reliance by one party on the acts or representations of another, causing a worsening of the first party's position." *Miller v. Herskovic*, No. 263250, 2006 Mich. App. LEXIS 3565 at *39 (Mich. Ct. App. 2006). Here, Plaintiff has alleged that in response to Defendants' promises regarding the ability to buy ViSalus products in bulk quantities on discounted rates and then sell those products on Amazon he: (1) spent "time, energy and investing money over five years to establish an Amazon storefront"; (FAC at ¶154); (2) "spent substantial, uncompensated time . . . and took other actions in further reliance on the continued business relationship and his decision to remain a ViSalus distributor". (*Id.* at ¶156). These actions worsened Plaintiff's position by taking time and money that he could have devoted to other

15

income generating pursuits and instead spending it in the service of ViSalus creating a benefit for ViSalus. (*Id*. at ¶¶128-30).

The fact that Plaintiff received some remuneration for the time and effort he put into the Amazon storefront is not sufficient to negate the element of detrimental reliance because the focus of detrimental reliance is on the actions of Plaintiff made in reliance on the promise (i.e., did he change his position in reliance on the promises of Defendants). Indeed, just because Plaintiff did receive *partial* remuneration for his efforts does not mean he should not receive *all* of what Defendants promised him (i.e., continued use of the Amazon storefront he established).

Fourth, the facts alleged in support of this claim demonstrate a clear inequity that this Court can and should remedy. Plaintiff spent years of his time and invested a substantial sum of money to build his Amazon storefront to make legitimate sales of the ViSalus product to the public. (FAC at ¶¶160-61).  Plaintiff did so based on the promises made to him by Sarnicola, Mallen and Blair, as the founders and management team for ViSalus, that he could continue to build this business model and profit from it. (*Id*. at ¶162).  Defendants then reneged on these promises in 2017 when they used a bogus trademark infringement claim to shut down Plaintiff's Amazon storefront, take the goodwill he had built over five years and used it for their own pecuniary gain at Plaintiff's expense. (*Id*. at ¶¶163-65).  These facts detail an 'injustice" that resulted from Defendants' actions.

## C.  Plaintiff Has Stated A Claim For Tortious Interference With His Business Relationship With Amazon.

Defendants' arguments that Plaintiff failed to state a claim for tortious interference with business expectancy (i.e., Plaintiff's business relationship with Amazon) also lack merit. First, Defendants' claim that Plaintiff has used group pleading is not supported by the record. The FAC alleged that three of the four Defendants took specific tortious actions that form the basis of the relief requested. (FAC at ¶163); *see also* (*Id.* at ¶¶136-37, 139). Plaintiff has identified which of Defendants took the tortious actions; this is not an instance in which Plaintiff is making general allegations against a non-specific group of defendants. (*Id.*).

Second, the FAC alleges that Plaintiff's sales of the ViSalus product were wholly unconnected from the business model/multi-level marketing/pyramid scheme that Defendants promoted as the main ViSalus business. (FAC at ¶¶5-11). Indeed, the thrust of the FAC is that Plaintiff departed from the ViSalus business model of recruiting down-line distributors and focused on selling the product through his Amazon storefront. (*Id.*).  Thus, Plaintiff's allegation that Defendants interfered with his Amazon storefront is not "inextricably intertwined" with the issue of whether ViSalus' main operation is or is not an illegal pyramid scheme. Plaintiff is not asking this Court to award him compensation for interference with any illegal business expectancy; Plaintiff is asking this Court to award him relief from

Defendants ViSalus, Sarnicola, and Mallen's interference with the legitimate Amazon storefront he ran for five years selling ViSalus' products.

### D.   Plaintiff Has Stated A Claim For Unjust Enrichment.

Defendants' argument that Plaintiff's claim for unjust enrichment fails is also incorrect.  First, on the issue of what benefit the Plaintiff conferred on Defendants, the benefit was not limited to providing an outlet for ViSalus to send large shipments of its product; rather the FAC alleges that the benefit to ViSalus, Sarnicola, Mallen, and Blair was that "creating the Amazon storefront, creating significant, positive feedback from customers through the Amazon storefront, and creating a loyal customer base within the Amazon storefront, increasing searches for the products to coincide with Amazon search algorithms, thereby promoting the ViSalus brand, created a benefit for Defendants ViSalus, Sarnicola, Mallen, and Blair." (FAC at ¶169). This benefit was assumed by those Defendants when they created the bogus copyright infringement claim to shut down Plaintiff's Amazon storefront and to set up their own Amazon storefront using that goodwill, customer base, and the existing Amazon search algorithms to their own benefit. (*Id*. at ¶171). Further, these allegations show that Plaintiff has conferred a benefit on *each* of Defendants that has nothing to do with the operation of what may be a pyramid scheme and the *in pari delicto* doctrine has no application. (*Id*. at ¶¶ 169-171). The fact that all of Defendants received this same benefit when they sabotaged Plaintiff's Amazon

storefront and converted the goodwill, customer base, and algorithmic infrastructure to their own benefit, is not impermissible group pleading – it is simply identifying the several people who were the recipients of the benefit he created.

### E.   Plaintiff Has Stated A Claim For Shareholder Oppression.

Defendants contend that Plaintiff's claim for shareholder oppression should be dismissed because Plaintiff does not allege that he is a shareholder in ViSalus nor does he allege an injury "as a shareholder" in ViSalus. But neither of these arguments can withstand a plain reading of the allegations in the FAC.

First, the FAC alleges, and seeks a declaratory ruling,[4] that Plaintiff is a shareholder in ViSalus. *See, e.g.,* (FAC at ¶¶173-182) (Plaintiff asking this Court to declare that he "is an owner of 1,135 equity shares of ViSalus common stock"). Specifically, Plaintiff alleges that: (1) Defendants awarded him the shares in April 2015; (*Id.* at ¶175); (2) Defendants publicly recognized him as a shareholder at several meetings (*Id.* at ¶176); (3) Defendants told him that the shares he held in ViSalus were "for life" and not dependent on him remaining an active ViSalus salesperson; (*Id.* at ¶¶ 118); (4) Defendants told him that he had earned 1,135 shares as of June 2017; (*Id.* at ¶177); and (3) he participated in several shareholder meetings

---

[4] Defendants argument that the declaratory ruling count must be dismissed is incorrect. This is not a "stand alone" count, but seeks the relief afforded by Rule 57 based on the factual allegations that Defendants awarded Plaintiff 1,135 shares of ViSalus stock and treated him as a ViSalus shareholder for two years. (FAC at ¶¶175-79); *see also* Fed R. Civ. P. 57.

and conference calls. (*Id.*). Plaintiff has alleged facts supporting the element that he is a current shareholder of ViSalus.[5]

Second, in order to sustain a claim for shareholder oppression, a plaintiff must allege that defendants interfered with his interests "as a shareholder." Mich. Comp. Laws Ann. § 450.1489. Michigan courts have recognized that a shareholder's interests "as a shareholder" include "voting at shareholder's meetings, electing directors, adopting bylaws, amending charters, examining the corporate books, and receiving corporate dividends." *Franchino v. Franchino*, 687 N.W.2d 620, 628 (Mich. Ct. App. 2004). Here, Plaintiff alleged that since June 2017 he has been denied, *inter alia*, the ability "to participate in shareholder meetings" and the right receive "the payment of distributions or dividends." (FAC at ¶¶178, 185). Thus, Plaintiff has alleged that the actions of Defendants have interfered with his interests "as a shareholder" sufficient to sustain a claim for shareholder oppression.

## F. Plaintiff Has Stated A Claim For Breach Of Fiduciary Duty.

Defendants argue that Plaintiff's claim for breach of fiduciary duty fails because he has not alleged that he is a shareholder in a closely held corporation as

---

[5] To the extent that Defendants argue that Plaintiff's claim fails because he alleges that Defendants converted his shares, thus not making him the current owner, this argument - again – denies Plaintiff the right to plead alternative facts. Here, Plaintiff can simultaneously plead that he is: (1) a current owner of ViSalus being denied his rights as a shareholder; and (2) not a current shareholder because Defendants have converted the shares he earned to their own use. Fed R. Civ. P. 8(d).

required by Nevada law. But this argument fails to apply the appropriate law and, alternatively, misapplies Nevada law.

Federal courts sitting in diversity apply the choice-of-law rules as set forth in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). In Michigan, breach of fiduciary duty is a claim sounding in tort. *See Engel Mgmt. v. Ford Motor Credit Co.*, No. 279868, 2009 Mich. App. LEXIS 317, at *12, (Mich. Ct. App. 2009). In tort claims, Michigan courts presume Michigan law applies, unless there is a rational reason to displace it. *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). To determine whether there is a rational reason for displacement, Michigan courts apply a two-step analysis: (1) the court looks to the foreign state to determine if it has an interest in having its law applied; and (2) if a rational reason exists, then the court determine whether Michigan has an interest in having its law applied, despite the foreign state interests. *Id.*; *Olmstead v. Anderson*, 400 N.W.2d 292, 302 (Mich. 1987).

Here, Nevada (the state of incorporation) does not have an interest in having its law applied in this case. ViSalus' corporate headquarters are in Michigan. (FAC at ¶21) The critical meetings and promises made by Defendants to Plaintiff occurred in Michigan (*Id*. at ¶¶41, 43). Nothing in the FAC indicates that any of the acts or omissions animating the FAC occurred in Nevada. However, even if the court were to find Nevada has an interest in having its law applied, Defendants' choice of law

fails on the second prong of the test. Michigan has a significant interest in having its law applied here – because ViSalus is headquartered in Michigan and regularly conducts business in Michigan, it is aware of its liability under Michigan law.

Defendants' reliance on *Productivity Technologies* is misplaced because in that case the court analyzed whether the rights and duties established by the Michigan Business Corporation Act applied to govern the fiduciary duties owed by a Delaware corporation to its officers and directors. *Productivity Techs. Corp. v. Levine*, 268 F. Supp. 3d 940, 947 (E.D. Mich. 2017).  Plaintiff has no such claim in the FAC. Instead, Plaintiff's claim in the FAC is a common law tort claim for breach of fiduciary duty, where the duty is not established by statute. (FAC at ¶¶188-89). Therefore, the court's finding in *Productivity Technologies* did not address the choice of law analysis under Michigan law (i.e., the presumptive *lex fori* rule).

Nevertheless, even if this Court determines that Nevada law applies, the facts alleged in the FAC are sufficient to support a claim for breach of fiduciary duty under Nevada law. Specifically, Defendants assert that under Nevada law breach of fiduciary duty actions against majority shareholders only sound in "closely held corporations." *Simon v. Mann*, 373 F. Supp. 2d 1196, 1199-1200 (D. Nev. 2005). But *Simon* does not stand for the position that minority shareholders can only bring claims against majority shareholders for breach of fiduciary duty in closely held corporations; rather, *Simon* stands for the proposition that in closely held

corporations, where the minority shareholders bring claims for breach of fiduciary duty – that would ordinarily be derivative claims because they involve harm to the corporation – those minority shareholders may bring the claims directly and not derivatively. *Id.* Those are not the facts Plaintiff alleges here. Instead, Plaintiff claims that Defendants breached the fiduciary duty they owed to him to distribute profits to him and to provide him with financial information about the company. (FAC at ¶185).  These are personal claims of harm to Plaintiff and not claims of harm to the company; thus, *Simon* has no application here and even applying Nevada law, plaintiff has stated a claim for breach of fiduciary duty against Defendants.

### G. Plaintiff Has Stated A Claim For Conversion.

Defendants' argument that Plaintiff has not stated a claim for conversion also fails. First, Plaintiff alleges that he owned 1,135 shares of ViSalus as of June 2017. (FAC at ¶132). Plaintiff alleges that at some time after June 1, 2017, and from that date forward, Defendants have effectively taken Plaintiff's shares of ViSalus by taking numerous actions inconsistent with Plaintiff's rights as a shareholder, including, *inter alia,* denying him dividends and the right to participate in the affairs of the company. (*Id.* at ¶185). Taken together, these allegations support the conclusion that Defendants have taken all of the rights Plaintiff had as a shareholder in ViSalus and converted them back to their own use, denying them to Plaintiff. (*Id.*) To be certain, Michigan law recognizes a cause of action for conversion where the

subject matter of the conversion is stock in a corporation. *See, e.g., Stoddard v. Manufacturers Nat'l Bank*, 593 N.W.2d 630 (Mich. Ct. App. 1999). Here, the facts alleged support the requisite elements of the claim; Plaintiff has alleged that Defendants exerted dominion and control over property belonging to Plaintiff (the shares of ViSalus stock that Plaintiff earned).

Further, Defendants' argument that this claim makes impermissible group allegation is misplaced. Here the FAC alleges that the conversion of Plaintiff's shares of stock was carried out by "ViSalus, Sarnicola, Mallen, and Blair". (*Id.* at ¶195). Plaintiff has alleged that all four Defendants have taken actions to take control over the 1,135 shares of ViSalus stock that Plaintiff earned. (*Id.*). There is nothing improper in alleging that four defendants took action in concert that harmed Plaintiff. Further, the FAC alleges that ViSalus, Sarnicola, Mallen, and Blair took the shares Plaintiff earned in ViSalus and "converted those interests to their own use." (*Id.* at ¶¶194-95). The allegation here is that Defendants took Plaintiff's equity in the company and the rights that came with it and re-distributed it to themselves. (*Id.*).

### H.   Plaintiff Has Stated A Claim For Promissory Estoppel To Enforce His Right To The Equity He Earned In ViSalus.

Plaintiff alleges a claim for promissory estoppel arguing that Defendants are estopped from denying the promises that they made to him that he had earned 1,135 shares of ViSalus stock through the Founders Equity Incentive Program. Defendants argue that Plaintiff cannot state a claim for promissory estoppel because Plaintiff has

not alleged facts sufficient to support the element that "the promise must be enforced so that justice may be avoided." *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. Ct. App. 1999). Specifically, Defendants argue that because Plaintiff made money though his efforts selling ViSalus' product - legitimately through his Amazon storefront – their promises of equity in the company, in exchange for additional sales can be ignored. However, Defendants did not just promise Plaintiff commissions on the sales he made; Defendants promised Plaintiff equity in ViSalus. (FAC at ¶215). Defendants were the majority shareholders in, and founders of, the company, thus they benefitted from the increased sales and exposure on Amazon that Plaintiff delivered in response to their promise. (*Id*.).  Defendants cannot seriously claim that after promising equity to Plaintiff they should be allowed to renege on that promise and retain the equity themselves simply because Plaintiff made money from sales consistent with his agreement with Defendants.

## III.   <u>CONCLUSION</u>

Plaintiff requests that this Court deny Defendants' motion.

Respectfully submitted,

NEUMAN ANDERSON GRIECO MCKENNEY, P.C.

<u>/s/ Kenneth F. Neuman</u>
Kenneth F. Neuman (P39429)
Jennifer M. Grieco (P55501)
Stephen T. McKenney (P65673)
Dated: June 21, 2018    Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 21, 2018, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record on the ECF Service List.

<u>/s/ Kenneth F. Neuman</u>
Kenneth F. Neuman (P39429)
NEUMAN ANDERSON
GRIECO MCKENNEY, P.C.
401 S. Old Woodward, Ste. 460
Birmingham, MI 48009
(248) 594-5252
